Rodríguez de Oronoz, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
El demandante-apelante de epígrafe solicita que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 30 de enero de 1997. Mediante dicha sentencia, el referido tribunal declaró con lugar la moción de sentencia sumaria presentada por la parte demandada-apelada, por entender que lo planteado en la demanda había sido adjudicado previamente. Así, ordenó el sobreseimiento y archivo de la reclamación presentada por la parte demandante.
Luego de examinar los escritos de las partes junto a los demás documentos que obran en el expediente ante nos, así como los autos originales del caso, confirmamos la sentencia apelada.
I
Don Félix Morales Diez (en adelante Morales Diez) fue presidente del Sindicato de Equipo Pesado (en adelante el Sindicato) durante veinticinco (25) años. Mientras era presidente, la Asamblea Soberana del Sindicato (en adelante, la Asamblea) aprobó una disposición reglamentaria, Artículo XVII del Reglamento del Sindicato, que concedía una pensión a los ex-presidentes del gremio que ascendía a diez dólares ($10.00) semanales por cada año durante el cual se hubiera desempeñado *616 como presidente. Por razón de dicha disposición, Morales Diez recibió una pensión de doscientos cincuenta dólares ($250.00) semanales a partir de su retiro de la presidencia de la unión, hasta el 4 de marzo de 1987, fecha en que la referida pensión le fue suspendida.
El 21 de agosto de 1986, el Sindicato presentó un procedimiento de sentencia declaratoria ante el Tribunal de Primera Instancia (Hon. Wilfredo Alicea López) en el cual solicitó que se decretara la nulidad de la disposición reglamentaria de la unión que establecía las pensiones a los ex-presidentes, que se ordenara la devolución de los pagos realizados y que se emitiera una orden de interdicto permanente prohibiendo los pagos futuros. (Caso Civil Núm. 86t4438).
Luego de que los ex-presidentes del Sindicato presentaran sus distintas alegaciones, el 2 de junio de 1987, el Sindicato presentó una moción de desistimiento aduciendo que su reglamento interno tenía los mecanismos adecuados para resolver la controversia del caso. De esta manera, el 26 de julio siguiente enmendó su Reglamento a los efectos de dar por terminada la pensión de los expresidentes del Sindicato.
Así pues, el 5 de junio de 1987, Morales Diez junto con Víctor Báez, otro de los ex-presidentes que constituían la parte demandada en el referido procedimiento de sentencia declaratoria, se allanaron a la moción de desistimiento con la condición de que se declarara con lugar la solicitud de pago de las pensiones adeudadas y reconvención presentadas por uno y otro. De igual modo, el 11 de junio de 1987, los otros expresidentes del Sindicato, Regino Calderón Hernández y Clotilde Santos Ortiz, expresaron su conformidad con la solicitud de desistimiento con la misma condición de que se les hiciera el pago de las pensiones en controversia.
Ante esta situación, el Tribunal de Primera Instancia resolvió con lugar, tanto la moción de desistimiento del caso, como la solicitud de pago de lo adeudado a los expresidentes del Sindicato. En consecuencia, mediante Sentencia del 14 de enero de 1988 y Sentencia Enmendada del 23 de febrero del mismo año, dicho tribunal ordenó al Sindicato el pago de las pensiones adeudadas computadas hasta la fecha en que se dejó sin efecto el Artículo XVII de su Reglamento.
Posteriormente, el Sindicato y Morales Diez suscribieron una Estipulación sobre el pago de la sentencia que presentaron al tribunal el 14 de abril de 1988. En la misma, se estipuló la suma que el Sindicato debía pagar a Morales Diez -las pensiones adeudadas hasta el 26 de julio de 1987 fecha en que se enmendó el Reglamento del Sindicato dando por terminada la pensión de los ex-presidentes— y la manera en que se realizarían los pagos. Como resultado de dicha Estipulación, y luego de algunos incidentes procesales, el 16 de septiembre de 1988, el Sindicato presentó Moción Sobre Cumplimiento Total de Sentencia en la cual indicó haber pagado todo lo que, en virtud de la Sentencia del tribunal, correspondía a los ex-presidentes del Sindicato, incluyendo lo adjudicado a Morales Diez. Por razón de tal Moción, el 11 de octubre de 1988, el Tribunal de Primera Instancia ordenó el archivo y sobreseimiento del caso Civil Núm. 864438.
Así las cosas, el 10 de junio de 1991, Morales Diez presentó la demanda objeto de la presente apelación ante el Tribunal de Primera Instancia (Hon. Felicita Pérez Rivera). En la misma alegó que el Sindicato le adeudaba los pagos de la pensión desde marzo de 1987, los cuales, según planteó, ascendían a doscientas veinte (220) semanas, a razón de doscientos cincuenta dólares ($250.00) por semana, más los intereses, lo cual sumaba $70,000. Argumentó además, que la omisión por parte del Sindicato le había causado sufrimientos y angustias mentales, a base de los cuales exigió una suma adicional. En su contestación, el Sindicato aceptó que se habían descontinuado los pagos desde aproximadamente el mes de marzo de 1987, pero negó la suma que Morales Diez calculó como adeudadas. Posteriormente, el 22 de abril de 1992, Morales Diez radicó moción solicitando que se dictara sentencia sumaria. Por su parte, el Sindicato se opuso a la referida moción el 8 de mayo del mismo año. Luego de ciertos incidentes procesales, incluyendo la necesidad de reconstruir el expediente, el 30 de enero de 1997, el Tribunal a quo declaró Ha Lugar la moción de Sentencia Sumaria presentada, pero a favor del Sindicato. Dicho tribunal fundamentó su decisión en la inexistencia de una controversia real sobre los hechos esenciales del caso y la procedencia en derecho de la sentencia sumaria por razón de que las alegaciones de la demanda constituían cosa juzgada.
En su escrito de apelación, Morales Diez plantea que el tribunal de instancia erró al aplicar la
*617 doctrina de cosa juzgada. Veamos.
n
La doctrina de cosa juzgada opera en Puerto Rico en virtud de lo dispuesto en el artículo 1204 del Código Civil, 31 L.P.R.A. 3343. En lo pertinente, dicho artículo señala:

"Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión." Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."

En Worldwide Food Distributors Inc. v. Colón Bermúdez, _ D.P.R. _ (1993), 93 J.T.S. 114, a la pág. 10966, nuestro Tribunal Supremo expresó lo siguiente en relación con la doctrina de cosa juzgada:
"Por cosa juzgada se entiende lo ya resuelto por fallo firme de un juez o tribunal competente y lleva en sí la firmeza de su irrevocabilidad. Indica también el respeto debido a lo fallado y la autoridad que resolvió...el fundamento de la cosa juzgada no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores, sino que se encuentra en la esencia misma de la resolución judicial, que no merecería tal nombre ni tendría fuerza y resultado, si no se fortaleciera de ese modo." Manresa, Comentarios al Código Civil Español, Tomo VIII, Vol. 2, Madrid, ed. 1967, págs. 278-279.
Dicha doctrina persigue el propósito de proteger a los litigantes de las molestias que supone litigar en repetidas ocasiones la misma controversia, promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes; en definitiva se pretende dar la debida dignidad a las actuaciones de los tribunales. Rodríguez Rodríguez v. Colberg Comas, _ D.P.R. _ (1992), 92 J.T.S. 102; Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978).
El efecto de la doctrina de cosa juzgada es evitar que en un pleito posterior se litiguen cuestiones que ya fueron o pudieron haber sido litigadas y adjudicadas en un pleito anterior. Worldwide Food Distributors Inc. v. Colón Bermúdez, supra; Rodríguez Rodríguez v. Colberg Comas, supra; Pagán Hernández v. U.P.R., supra. De este modo, la aplicación de la doctrina de cosa juzgada presupone que entre el pleito ya resuelto y aquel en el que se plantea dicha doctrina acontezca identidad de cosas, causas, litigantes y calidad en que lo fueron. Worldwide Food Distributors Inc. v. Colón Bermúdez, supra. Por supuesto, el Tribunal Supremo ha establecido que la doctrina de cosa juzgada no se aplicará inflexiblemente cuando hacerlo derrotaría los fines de la justicia. Aponte Caratini v. Román Torres, _ D.P.R. _ (1998), 98 J.T.S. 54. Pero además, ha dejado claro que en ausencia de riesgo con respecto a los fines de la justicia, un demandante está impedido de relitigar sus reclamos cuando los mismos quedaron resueltos mediante sentencia final y firme. Worldwide Food Distributors, Inc. v. Colón Bermúdez, supra.
Luego de examinar los autos originales de este caso, advertimos que de las distintas alegaciones presentadas por Morales Diez ante el Tribunal de Primera Instancia en el caso Civil Núm. DCD-91-1363, sobre Cobro de Dinero y Daños, se desprende que dicho tribunal tuvo ante si los mismos asuntos que previamente había dilucidado y resuelto el Tribunal de Primera Instancia en el caso Civil Núm. 86-4438, sobre Sentencia Declaratoria e Injunction, primer caso presentado sobre el asunto.
Morales Diez alegó ante el foro de instancia del segundo caso que el Sindicato le adeudaba los pagos de su pensión a partir del mes de marzo de 1987 y que la enmienda al Reglamento del Sindicato del 26 de julio de 1987, la cual eliminaba la referida pensión, no podía tener efecto sobre su pensión porque esta era un derecho adquirido, no susceptible de ser suspendido. Tal alegación fue reiterada en los distintos escritos presentados por Morales Diez ante el tribunal a quo. Veamos.
En su Moción para solicitar sentencia sumaria, Morales Diez expresa que "[u]na vez se adquiere el derecho y se obliga el Sindicato y el derecho del pasado presidente al cobro de la pensión por mera enmienda al Reglamento." Apéndice, a la pág. 34. En el mismo escrito señaló además:
*618 "La posición de la parte demandante a la luz del Principio de Equidad y la Jurisprudencia aplicable es que la única interpretación justa a la controversia ante la consideración del tribunal es que la pensión de los expresidentes del Sindicato de Trabajadores de Equipo Pesado vitalicia mientras exista el Sindicato y no es susceptible de dejarse sin efecto o enmendarse. Obsérvese que no se niega la facultad del Sindicato para enmendar o dejar sin efecto la referida pensión para futuros presidentes." Apéndice, a la pág. 36.
Asimismo, en la Moción en apoyo para solicitar Sentencia Sumaria presentada el 9 de diciembre de 1993, Morales Diez señaló:
"No se pone en duda la facultad que tiene el Sindicato de Equipo Pesado para modificar, la disposición reglamentaria en torno a las pensiones de sus pasados presidentes. Nuestra contención, es sin embargo, que tales enmiendas o modificaciones no pueden tener efecto retroactivo deforma tal que elimine el derecho que hubiere adquirido un pasado presidente como en el presente caso." Apéndice, a la pág. 41.
De la misma manera, en su Moción en apoyo de solicitud de Sentencia Sumaria, presentada el 26 de septiembre de 1996, Morales Diez reiteró su contención de que cualquier enmienda al Reglamento del Sindicato no podía afectar los derechos adquiridos sobre su pensión y de que "[cjumplidas las condiciones impuestas por el reglamento de la unión, el demandante es acreedor de una pensión vitalicia que no puede ser variada unilateralmente mediante enmienda al reglamento que la otorgó”. Apéndice, a la pág. 50.
Por su parte, la Minuta del 12 de noviembre de 1996 hizo constar que una de las controversias mencionadas por Morales Diez era precisamente "[SJi la enmienda aprobada por el Sindicato con fecha 26 de julio de 1987 puede tener algún efecto sobre los derechos adquiridos por el señor Félix Morales Diez". Véase Expediente del Caso Civil Núm. DCD-91-1363 sobre Cobro de Dinero y Daños.
Dichas contenciones, sin embargo, fueron sustancialmente las mismas presentadas y adjudicadas en el primer caso. Los escritos presentados por Morales Diez en el primer caso así lo demuestran. Veamos.
En su escrito de Contestación a la acción de Sentencia Declaratoria incoada por el Sindicato en el primer caso, Morales Diez argumentó, en relación al artículo del Reglamento que autorizaba la pensión de los ex-presidentes: "Si dicho artículo del reglamento fuera eliminado lo que allí establece tendría que seguirse pagando ya que el reglamento de una Unión goza de la naturaleza de un contrato." Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
Asimismo, mediante escrito del 11 de mayo de 1987, Morales Diez sostuvo que al estar contenida en el Reglamento del Sindicato, su pensión adquiría carácter de derecho adquirido; al respecto sostuvo que: "Al incluirse en el Reglamento la disposición concediendo la pensión se reconoce el derecho a los demandados y surgió una obligación que favorece al que la disfruta". Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
También, en la Contestación a la Moción de desistimiento del Sindicato y la Moción solicitando el pago e imposición de sanciones, presentadas el 5 de junio de 1987 y el 2 de septiembre de 1987 respectivamente, Morales Diez reiteró su solicitud de que se ordenara el pago de su pensión retenido por el Sindicato desde el mes de marzo de 1987. Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
En el mismo sentido, el 8 de diciembre de 1987, Morales Diez presentó una Moción Informativa en la cual expresó que "por no haberse acreditado la suspensión de la pensión, el demandante viene obligado a pagar hasta el día 6 de noviembre de 1987". Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
Por último, en el escrito titulado Moción en relación a documento titulado certificación, Morales *619 Diez argumentó que la enmienda del Reglamento del 26 de julio de 1987 "no tiene ningún valor en cuanto a poner fin ("dar por terminada") la pensión a los ex-presidentes". Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
Evidentemente, la identidad de los argumentos de Morales Diez en ambos casos suscitó que las controversias presentadas ante el Tribunal de Primera Instancia fueran las mismas en el primer y segundo pleito. Es decir, si Morales Diez era acreedor de los pagos de su pensión a partir de marzo de 1987 y si el Sindicato estaba facultado para aprobar una enmienda a su Reglamento con el efecto de suspender los pagos de la referida pensión.
No obstante, tales controversias habían sido ya adjudicadas por el foro de instancia que entendió en el primer caso. Dicho tribunal resolvió que el Sindicato si "... puede en asamblea citada a tales efectos enmendar su Reglamento, tal y como lo hizo para dejar sin efecto las pensiones a sus ex-presidentes". Apéndice, a la pág. 60. De esta forma, dicho tribunal adjudicó la capacidad del Sindicato, reunida en Asamblea, para modificar su reglamento a los efectos de suspender el pago de las pensiones a sus ex-presidentes. Además, dicho tribunal dejó claro que "tal facultad no se extiende a dejar sin efecto obligaciones contraídas" Id. Es decir, que las pensiones dejadas de pagar antes de la enmienda al Reglamento constituian obligaciones ya contraídas, por lo cual correspondía el pago de las mismas hasta la fecha en que se enmendó el Reglamento para eliminar tales pensiones. En ese sentido, el referido tribunal resolvió:
"Se declara con lugar la reconvención de los demandados y se ordena a la parte demandante pagarle las pensiones adeudadas computadas hasta la fecha en que se dejó sin efecto el Artículo XVII del Reglamento..." Apéndice, a la pág. 61.
Morales Diez pudo apelar la determinación judicial que no le reconoció el derecho a la pensión posterior a la enmienda al Reglamento como un derecho adquirido. No obstante, no disputó dicha determinación en foro apelativo alguno. Por el contrario, suscribió una Estipulación presentada el 14 de abril de 1988 ante el foro de instancia que entendió en el primer caso. En dicho acuerdo, Morales estipuló que:
"El co-demandado Félix Morales Diez acepta las cantidades y la forma de pago establecidos en los párrafos anteriores, en concepto de satisfacción total de la Sentencia emitida a favor en el presente caso; entendiéndose que la parte demandante se obliga al fiel y puntual cumplimiento de las formas de pago acordadas", Estipulación sobre pago de sentencia, Expediente del caso Civil Núm. 86-4438 sobre Sentencia Declaratoria e Injunction, Tribunal de Primera Instancia.
A base del cumplimiento de los pagos, según estipulados, el Tribunal de Primera Instancia decretó el archivo y sobreseimiento de este primer pleito el 11 de octubre de 1988. La Sentencia de dicho tribunal advino final y firme al concluir el término de apelación correspondiente sin que Morales Diez presentara algún recurso ante el foro apelativo correspondiente. Por tal razón, resulta extremadamente improcedente que a pesar de haber expresado su satisfacción total con el pago que se le adjudicó en el primer pleito, Morales Diez haya instado un segundo pleito para alegar que se debieron adjudicar otros pagos de la pensión, sobre todo cuando hemos visto que los argumentos utilizados por Morales Diez ya habían sido dilucidados en el primer pleito.
Con su estipulación e inacción en el foro apelativo correspondiente, Morales Diez renunció a recibir pagos por concepto de la pensión después del 26 de julio de 1987, fecha en la cual se eliminó la misma del Reglamento del Sindicato, y aceptó los pagos que le adjudicó el tribunal hasta julio de 1987. De esa manera, también abdicó la posibilidad de presentar nuevos argumentos para apoyar sus reclamaciones ya que, como es conocido, la doctrina de cosa juzgada opera no sólo con respecto a lo alegado, sino frente a lo que pudo haberse alegado. Díaz v. Navieras de P.R., 118 D.P.R. 297 (1987).
III
En definitiva, es claro que entre lo resuelto por el Tribunal de Primera Instancia en el primer caso y lo alegado ante el tribunal a quo en el segundo, existe la más clara identidad de cosas, causas, litigantes y calidad en que lo fueron. En ambos casos, la controversia acontece sobre la pensión que la unión pagaba a Morales Diez. La causa o motivo de pedir en ambos procesos fue la pretensión de *620 suspender los pagos de la pensión, de parte del Sindicato, y la voluntad de reafirmar su derecho sobre los pagos de la pensión, de parte de Morales Diez. La controversia se suscitó entre los mismos litigantes, el Sindicato y Morales Diez. Ambos en la misma calidad en que lo habían sido ya, Morales Diez como promotor de un reclamo para cobrar sus pensiones y el Sindicato como objeto del mismo. En este sentido, el tribunal a quo actuó correctamente al aplicar la doctrina de cosa juzgada.
Por los fundamentos expuestos, confirmamos la Sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General