ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES DEL GOBIERNO DE PUERTO RICO<br><br>Apelante<br><br>v.<br><br>TETRAD ENTERPRISES, LLC<br><br>Apelada | TA2025AP00488 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. SJ2024CV09741<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece el Departamento de Recursos Naturales y Ambientales ("DRNA" o "Apelante") mediante *Apelación* y nos solicita que revoquemos la *Sentencia* emitida el 12 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("TPI"). En virtud del referido dictamen, el TPI desestimó la *Demanda Enmendada* instada por el DRNA por constituir cosa juzgada, en su modalidad de fraccionamiento de causas.

Por los fundamentos que proceden, se *revoca* la *Sentencia* apelada.

**I.**

El caso de autos tuvo su génesis procesal el 21 de octubre de 2024, cuando el DRNA presentó una *Solicitud de Interdicto Provisional e Injunction Permanente* contra Tetrad Enterprises, LLC ("Tetrad" o "Apelada"). Sostuvo que, en el año 2020, ante los daños sufridos por las Casas de Bombas tras el paso del Huracán María, suscribió una serie de contratos de emergencia con Tetrad. Expuso que tales contratos tenían como fin: (1) el arrendamiento, operación y mantenimiento de las bombas hidráulicas; y (2) la adquisición y sustitución del sistema de bombas. No obstante, alegó que Tetrad incumplió con sus obligaciones, lo cual afectó la operación de las Casas de Bombas y, en consecuencia, puso en riesgo

la seguridad pública. Por tanto, solicitó la concesión de un *Injunction Preliminar y Permanente,* ordenando el cese inmediato de las conductas torticeras llevadas a cabo por Tetrad. Además, peticionó que se le prohibiera el acceso, uso e interferencia con las bombas, así como la entrega inmediata de las bombas arrendadas.

Tras varias instancias procesales, el 3 de junio de 2025, el foro de instancia dictó una *Sentencia Parcial,* mediante la cual desestimó la acción correspondiente al interdicto preliminar, ya que se había tornado académica. A su vez, ordenó el traslado del caso a una sala civil, "para el trámite de las causas de acción pendientes".[1]

El 5 de junio de 2025, Tetrad instó una *Moción Solicitando la Desestimación o Archivo del Presente Caso por Academicidad* (en adelante, "Moción de Desestimación"). Manifestó que el DRNA solicitó como único remedio que se le prohibiera a Tetrad el acceso a las bombas hidráulicas y su operación. Destacó que, en vista de que las partes habían llegado a un acuerdo, el foro de instancia desestimó la reclamación en cuanto al *injunction* preliminar, por académico. Ante ello, arguyó que procedía el archivo del caso de epígrafe, por no existir ningún remedio o causa de acción pendiente de adjudicación. Añadió que las controversias colaterales relacionadas a los contratos estaban dirimidas en el caso Civil Núm. SJ2024CV10215, *MWI Corporation v. Tetrad Enterprises, LLC y otros.*

Consecuentemente, el 25 de junio de 2025, el DRNA presentó su *Moción en Oposición a la Moción de Desestimación por Academicidad,* en la cual puntualizó que, desde su inicio existen alegaciones relacionadas al incumplimiento contractual por parte del Apelado. Insistió en que las alegaciones fueron expresamente reconocidas por el TPI como parte de su reclamo. Señaló que el pleito SJ2024CV10215 se presentó luego del caso de epígrafe. Además, sostuvo que el pleito iniciado por MWI Corporation (en adelante, "MWI") no subsanaría el remedio que este le solicita a Tetrad. En esta

---

[1] *Véase,* Apéndice del recurso, Entrada Núm. 80, pág. 3.

misma fecha, el Apelante presentó una *Solicitud de Autorización de Enmienda a la Demanda.* Reiteró que, desde los inicios del pleito, señaló expresamente un incumplimiento contractual por parte de Tetrad. Asimismo, detalló que en Vista Urgente celebrada el 24 de octubre de 2024, el TPI dispuso en su *Minuta,* emitida el 30 de octubre de 2024, que: "en este pleito se alega un incumplimiento de contrato, asunto que no se atiende en la sala de procedimientos extraordinarios, sino, en una civil ordinaria".[2] Cónsono con lo anterior, expuso que, luego de dictar la *Sentencia Parcial,* el TPI ordenó el traslado del caso a una sala civil ordinaria para la continuación del pleito. Por ende, solicitó autorización para enmendar la demanda con la intención de: (1) incluir el número de registro corporativo de Tetrad; (2) corregir y actualizar la dirección física y postal de dicha entidad; y (3) ampliar las alegaciones sustantivas para incorporar todas las causas de acción que el DRNA reclama contra Tetrad, incluyendo reclamaciones por incumplimiento contractual, daños y perjuicios, cobro de dinero, dolo y enriquecimiento injusto.

Así las cosas, el 26 de junio de 2025, el TPI emitió una *Orden* en la cual denegó la *Moción Solicitando la Desestimación o Archivo del Presente Caso por Academicidad.* Paralelamente, emitió otra *Orden* por medio de la cual autorizó las enmiendas solicitadas por el Apelante.

Por su parte, el 7 de julio de 2025, Tetrad presentó una *Moción en Solicitud de Reconsideración y de Desestimación de la Demanda Enmendada* donde reiteró que en el presente caso no existen controversias pendientes de adjudicación. Señaló, además, que el DRNA está limitado a dirimir las reclamaciones aquí presentadas por la doctrina de cosa juzgada, en su modalidad de fraccionamiento de causas. Explicó que, el Apelante renunció a la causa de acción, toda vez que no presentó una reconvención compulsoria en el caso Civil Núm. SJ2024CV10215.

El 29 de julio de 2025, el DRNA presentó la *Moción en Oposición a la Solicitud de Reconsideración Presentado por la Parte Demandada.* En la misma,

---

[2] *Íd.*, Entrada Núm. 85, pág. 1; Entrada Núm. 26, pág. 1.

recalcó que, a través del trámite procesal, se estableció que las controversias relacionadas al incumplimiento de contrato serían litigadas mediante la vía ordinaria. Argumentó que, desde el principio, el tribunal entendió que las alegaciones presentadas en su *Demanda* hacían referencia a los actos de obstrucción y las violaciones a los deberes contractuales del Apelado. Por ende, el propósito de la *Demanda Enmendada* era exponer con mayor especificidad los planteamientos formulados inicialmente. Bajo esta expectativa, explicó que no era procedente la reconvención compulsoria en el pleito SJ2024CV10215. Finalmente, señaló que, no es de aplicación la doctrina de cosa juzgada, dado a que los pleitos giran en torno a contratos independientes y reclamos diferentes.

Posteriormente, el 12 de agosto de 2025, el TPI emitió una *Sentencia* en la que desestimó el caso de autos por entender que la *Demanda* original no contenía ninguna alegación o solicitud de remedio sobre las causas de acción presentadas mediante la *Demanda Enmendada* relacionadas al incumplimiento de contrato, dolo, cobro de dinero, enriquecimiento injusto y daños. Estableció que la *Demanda* original se limitó a solicitar un remedio interdictal. Siendo así, concluyó que el Apelante debió presentar la reconvención compulsoria en el pleito SJ2024CV10215. Por lo tanto, al no hacerlo, el DRNA renunció a cualquier causa de acción sobre los hechos planteados. Además, puntualizó que, al no existir un litigio pendiente, el DRNA no tenía ningún impedimento para presentar sus alegaciones sobre incumplimiento de contrato en el segundo pleito. Profundizó que, mediante la enmienda a las alegaciones, el Apelante presentó un nuevo pleito referente a los mismos hechos adjudicados, por lo que operaba la figura de fraccionamiento de causas.

En desacuerdo, el 27 de agosto de 2025, el DRNA presentó una *Solicitud de Reconsideración* en la cual adujo que el foro primario no poseía la autoridad para alterar lo dispuesto en la *Sentencia Parcial* emitida el 3 de junio de 2025. Arguyó que, mediante el referido dictamen, el tribunal ordenó el traslado del caso a una sala ordinaria para la continuación de los procedimientos sobre las causas de acción de índole contractual. Además, señaló que Tetrad no recurrió ni solicitó una reconsideración de esta, por lo que la sentencia advino final y firme. A su

vez, mencionó varias instancias procesales en las que el foro primario reconoció la existencia de una reclamación contractual. Por ello, el Apelante planteó que confió en que su petitorio sería atendido mediante la vía ordinaria, en el mismo pleito. En la alternativa, argumentó que correspondía que el foro primario consolidara ambos pleitos en lugar de desestimar su causa de acción.

No obstante, el 28 de agosto de 2025, el TPI emitió una *Orden* donde declaró No Ha Lugar la *Solicitud de Reconsideración.*

En desacuerdo con lo anteriormente resuelto, el 27 de octubre de 2025, el DRNA acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló la comisión de los siguientes errores:

> **El Tribunal de Primera Instancia cometió un craso error de derecho al desestimar la *Demanda Enmendada* bajo el fundamento de cosa juzgada, en su modalidad de fraccionamiento de causas, privándole al DRNA de su derecho a reclamar por crasos incumplimientos contractuales.**

> **El Tribunal de Primera Instancia incidió al desestimar la *Demanda Enmendada,* al determinar que el DRNA debió presentar una reconvención compulsoria en otro pleito que fue presentado con posterioridad.**

> **El Tribunal de Primera Instancia erró al desestimar la *Demanda Enmendada,* y así revisitar una *Sentencia Parcial* —que era final y firme— en la cual se determinó que subsistían las controversias contractuales que debían atenderse en una sala ordinaria.**

El 28 de octubre de 2025, se emitió una *Resolución* en la que se otorgó al Apelado un término de treinta (30) días para presentar su oposición. En cumplimiento, el 24 de noviembre de 2025, Tetrad presentó su *Alegato en Oposición.* Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

## II.

### -A-

Para que se configure la defensa de cosa juzgada se tiene que cumplir con los requisitos siguientes: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se

pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad. *Beniquez et al v. Vargas et al.*, 184 DPR 210, 221-225 (2012).

El ilustre tratadista español Manresa define la doctrina de cosa juzgada como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad." J.M. Manresa, *Comentarios al Código Civil Español*, Ed. Reus, T. VIII, Vol. II, 6ta Ed., Madrid, España, 1967, pág. 278. El efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa. *Méndez v. Fundación*, 165 DPR 253, 267 (2005); *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 DPR 940, 950 (1972).

En aras de que el litigante pueda invocar exitosamente la defensa de cosa juzgada, es preciso que entre el caso resuelto por la sentencia y en el caso que se invoca la misma, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Méndez v. Fundación, supra*, pág. 267. No obstante, **en ciertas ocasiones se ha rechazado la aplicación de la defensa de cosa juzgada, aun cuando concurren los mencionados requisitos, para evitar una injusticia** o cuando se plantean consideraciones de interés público. *Parrilla v. Rodríguez*, 169 DPR 263, 269 (2004). (Énfasis nuestro). Ahora bien, no se favorece la aplicación liberal de excepciones a la doctrina de cosa juzgada puesto que se puede afectar la finalidad de las controversias adjudicadas, y por ende el buen funcionamiento del sistema judicial. *Íd.*, pág. 271.

El fraccionamiento de causas de acción constituye una modalidad de la doctrina de cosa juzgada. La misma es aplicable a toda reclamación posterior que se presente entre las mismas partes y sobre el mismo asunto. *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR, 133, 155-156 (2011). Su propósito es promover la finalidad de las controversias y evitar la molestia continua a una

parte con la presentación sucesiva de varios pleitos relacionados al mismo asunto. *Íd.*, pág. 156. Esta modalidad procede cuando el demandante obtiene sentencia en un primer pleito, y luego radica una segunda acción contra la misma parte por otra porción de esa misma reclamación. *Presidential v. Transcaribe*, 186 DPR 263, 278 (2012). Es decir, el demandante estará impedido de presentar otro pleito contra el mismo demandado por otras reclamaciones, luego de terminado el primer pleito. *Íd.*, pág. 277-278.

Se entiende que, si un demandante no expuso íntegramente su reclamación en el pleito originalmente instado, **renuncia** a las causas o remedios no presentados. Una sentencia dictada en un caso anterior constituye cosa juzgada en cuanto a todos los puntos que pudieron o debieron haber sido litigados y determinados. (Énfasis nuestro). *Díaz Burgos v. Navieras de P.R.,* 118 DPR 297 (1987). Ergo, si un querellante tiene una reclamación, en el pleito que radica debe exponerla íntegramente y no parte de ella. De no hacerlo así, no puede permitírsele luego que radique una nueva querella por el remanente de la reclamación o causa de acción. *Avellanet v. Porto Rican Express*, 64 DPR 693 (1944).

**-B-**

Sobre las enmiendas a las alegaciones, la Regla 13.1 de las de Procedimiento Civil dispone que:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo. 32 LPRA Ap. V., R. 13.1.

Cónsono con esta disposición, una vez que las partes han intercambiado alegaciones, solamente podrán enmendarlas con el consentimiento escrito de la

parte contraria o con el permiso del tribunal. Nuestro más Alto Foro ha resuelto que los tribunales deberán conceder el permiso para enmendar las alegaciones originales de forma liberal, aun cuando el proceso se encuentre en una etapa avanzada. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012). A lo anterior, debe integrarse que existe una clara política judicial de que los casos se ventilen en sus méritos. *Íd.*

A pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal para autorizar enmiendas a las alegaciones, esta liberalidad no es infinita. *Colón Rivera v. Wyeth Pharm.*, *supra*, a la pág. 199, citando a *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322 (2010); *Romero v. S.L.G. Reyes*, 164 DPR 721, 730 (2005); *Epifanio Vidal, Inc. v. Suro*, 103 DPR 793, 796 (1976). El Tribunal Supremo ha expresado que, antes de autorizar una enmienda a las alegaciones, el tribunal debe analizar y tomar en consideración: (1) el impacto del tiempo trascurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada. *Colon Rivera v. Wyeth Pharm*, *supra*, a la pág. 199, citando a *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 748 (2005). Sin embargo, el Alto Foro ha reiterado que, "[e]l factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria". *Íd.* En atención a ello, los tribunales poseen amplia facultad discrecional para permitir enmiendas a una demanda, aun en etapas avanzadas del procedimiento. *Colón Rivera v. Wyeth Pharm.*, *supra*, pág. 198, citando a J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, Colombia, [S. Ed.], 2010, pág. 116.

Por lo que, estas enmiendas se podrán utilizar para abundar en las alegaciones presentadas originalmente, ampliar las causas de acción expuestas de la demanda o para añadir otra causa de acción. *León Torres v. Rivera Lebrón*, 204 DPR 20, 66 (2020). Incluso, el cambio en la teoría original no debe ser un impedimento para denegar una solicitud de enmienda en las alegaciones. *Íd.*

**III.**

En su petitorio el Apelante aduce, en síntesis, que erró el foro de instancia al desestimar su causa de acción por determinar que la *Demanda Enmendada* configura cosa juzgada, en su modalidad de fraccionamiento de causas. Según el TPI, este debió presentar sus alegaciones mediante una reconvención compulsoria en el pleito presentado posteriormente por MWI. Además, expuso que, al desestimar su causa de acción, el foro primario revisitó la *Sentencia Parcial* que estableció la subsistencia de las controversias contractuales a ser dirimidas mediante una sala ordinaria.

La doctrina de cosa juzgada tiene el efecto de impedir la presentación posterior de un pleito entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas con propiedad en la acción anterior. El Tribunal Supremo ha rechazado su aplicación, aun cuando concurren los mencionados requisitos, para evitar una injusticia. En su modalidad de fraccionamiento de causas, promueve la finalidad de las controversias y persigue evitar la molestia continua a una parte contra la presentación sucesiva de pleitos presentados sobre el mismo asunto. Para ello, es necesario que exista una sentencia anterior, que recaiga sobre las mismas partes y sobre la misma causa de acción. Es decir, la defensa afirmativa procede cuando la parte obtiene una sentencia en el primer pleito y luego radica una segunda causa de acción contra la misma parte, por otra porción de la misma reclamación.

Para fines de nuestro análisis, es necesario examinar el tracto procesal de ambos casos. El pleito que nos concierne tuvo su génesis el 21 de octubre de 2024. Más tarde, el 24 de octubre de 2024, se celebró una vista urgente en la cual el TPI expresó que la causa de acción de índole contractual sería tramitada mediante la vía ordinaria. Posteriormente, para el 13 de enero de 2025, el TPI consignó en una *Minuta* que el asunto del incumplimiento contractual debería ser atendido en una sala ordinaria. Luego de varios incidentes procesales, el 3 de junio de 2025, el TPI emitió una *Sentencia Parcial* en la que desestimó la solicitud de *injunction* preliminar y reasignó el caso a una sala ordinaria para la

tramitación de las causas de acción pendientes. Por su parte, el 5 de junio de 2025, Tetrad presentó su *Moción de Desestimación* donde señaló que el DRNA solicitó como único remedio que se le prohibiera el acceso a las bombas hidráulicas y su operación. En vista de que el TPI emitió una sentencia desestimatoria, arguyó que procedía el archivo del caso de epígrafe, por no existir ningún remedio o causa de acción pendiente de adjudicación. Consecuentemente, el 25 de junio de 2025, el DRNA solicitó autorización para presentar una *Demanda Enmendada*. Así las cosas, el TPI denegó la solicitud de desestimación del Apelado y permitió las enmiendas a las alegaciones del Apelante.

En el segundo pleito, MWI presentó una *Demanda* en contra de Tetrad por incumplimiento de contrato y cobro de dinero, el 31 de agosto de 2024. En la misma se incluyó al DRNA como parte indispensable y se hizo constar que el Apelante no formó parte de su contrato con Tetrad. Luego, el 18 de febrero de 2025, Tetrad presentó su *Contestación a Demanda; Reconvención; Demanda contra Coparte y Demanda contra Tercero.* Consecuentemente, el 24 de mayo de 2025, el DRNA presentó su *Contestación a Demanda [Entrada 1]; Contestación a Demanda Coparte y Comparecencia especial en Contestación a Demanda contra Tercero [Entrada 61]* (en adelante, "Contestación a Demanda Contra Coparte") en la que hizo constar que cualquier reclamación solicitada por Tetrad debía ser planteada en el pleito primario.

En el caso de epígrafe, el TPI emitió una *Sentencia* en la cual desestimó el pleito al entender que el Apelante tuvo oportunidad de litigar su causa de acción en un pleito distinto y no lo hizo. Concluyó que, al enmendar la demanda, presentó un nuevo caso en contra de la misma parte, por lo que aplica la doctrina de cosa juzgada en su modalidad de fraccionamiento de causas de acción.

De una comparación de ambos pleitos, resulta necesario señalar que, este versa sobre la relación contractual entre Tetrad y un tercero con el cual el DRNA no convino. Además, no cabe duda alguna que el caso Civil Núm. SJ2024CV10215 se presentó posterior al caso que nos ocupa. Ahora bien, debemos notar que, a la fecha en la que se instó el segundo pleito, no existía una

sentencia en el pleito primario. De hecho, la *Sentencia Parcial* se emitió posterior a la comparecencia del Apelante en el segundo caso. Debido a la inexistencia de una sentencia anterior que atienda las mismas reclamaciones y que fuera dirigida contra las mismas partes, resulta inoperante la doctrina de cosa juzgada en su modalidad de fraccionamiento de causas.

Las Reglas de Procedimiento Civil permiten a las partes la enmienda de las alegaciones de manera liberal, en cualquier momento de los procedimientos. Las enmiendas se podrán utilizar para abundar en las alegaciones presentadas originalmente, ampliar las causas de acción expuestas de la demanda o para añadir otra causa de acción. Incluso, el cambio en la teoría original no debe ser un impedimento para denegar una solicitud de enmienda en las alegaciones. No obstante, su permisibilidad no es infinita. Los tribunales gozan de amplia discreción para autorizar las enmiendas a las alegaciones aun en etapas avanzadas del litigio. Además, están llamados a hacer un análisis sobre el efecto que tendrán tales enmiendas en el pleito, enfocadas primordialmente en el perjuicio que pueda ocasionar a la otra parte.

Según las disposiciones normativas que hemos reseñado, al momento de aceptar o denegar una enmienda, el factor que resulta de mayor envergadura es el perjuicio que le ocasionaría a la otra parte. En el presente caso, Tetrad ha estado notificado sobre la reclamación en su contra desde su inicio. En su *Demanda*, el DNRA expuso una serie de alegaciones sobre el incumplimiento contractual por parte del Apelado. Si bien en su petitorio inicial se atienden cuestiones relacionadas al *injunction* preliminar y permanente, lo cierto es que señala actos o conductas torticeras relacionadas a sus deberes contractuales. Debemos precisar que, a la fecha en la que se presentó la *Contestación a Demanda Contra Coparte* en el segundo pleito, el Apelante tenía una expectativa de que su causa de acción sería dirimida en el caso que nos ocupa. Recalcamos que el TPI expresó en al menos dos (2) instancias que la causa de acción contractual se tramitaría mediante una sala ordinaria. Incluso, en la *Sentencia Parcial* el juzgador del foro primario ordenó la reasignación del caso a una sala civil "para el trámite de las causas de acción pendientes". En corto, no estamos

ante nuevas alegaciones a ser consideradas por el foro de instancia. Al evaluar detenidamente la solicitud de enmiendas, el momento en que fue presentada y, luego de haber sopesado el posible perjuicio a la parte recurrida, colegimos que autorizar la demanda enmendada, no le ocasiona perjuicio al Apelado.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de esta *Sentencia*, se *revoca* el dictamen apelado. Consecuentemente, se devuelve el caso al foro primario para que continúen los procedimientos, de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones